Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| LORTU-TA LTD., INC.<br><br>Parte Apelante<br><br>v.<br><br>CORPORACIÓN MONTE ELVIRA<br><br>Parte Apelada | TA2026AP00100 | Apelación Procedente del Tribunal de Primera Instancia, Sala Superior de Coamo<br><br>Civil Núm.: CO2024CV00170<br><br>Sobre: Incumplimiento de Contrato, Daños, Enriquecimiento Injusto, Sentencia Declaratoria |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de mayo de 2026.

Comparece ante *nos*, LORTU-TA LTD, INC. (parte demandante o apelante) y nos solicita que revisemos la *Sentencia* emitida el 15 de diciembre de 2025 por el Tribunal de Primera Instancia (TPI o foro primario), Sala Superior de Coamo. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* a la solicitud de sentencia sumaria presentada por la Corporación Monte Elvira (parte demandada o apelada) y, en consecuencia, denegó la causa de acción de epígrafe.

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen apelado.

## I.

Surge del expediente ante nuestra consideración que, el 9 de abril de 2024, la parte demandante incoó una *Demanda* sobre sentencia declaratoria, incumplimiento de contrato, enriquecimiento injusto y daños contra la parte demandada.

Según las alegaciones, el 16 de diciembre de 2006, las partes suscribieron un Contrato de Opción de Compraventa sobre un predio de terreno ubicado en el Barrio San Idelfonso de Coamo. En virtud de dicho contrato, la parte demandada concedió a la parte demandante una opción de compraventa sobre la referida propiedad. Las partes acordaron como precio alzado de compraventa la suma de $13,000,000.00. Como depósito y pago por la opción, acreditable al precio de compraventa, la parte demandante entregó a la parte demandada la suma de $225,000.00. El término de la opción sería de dieciocho (18) meses a partir del otorgamiento del contrato y podría prorrogarse, a discreción de la parte demandante, siempre que la Junta de Planificación no hubiese determinado la aprobación de la consulta de ubicación relacionada con la propiedad.

Alegó que el contrato contenía, en su cláusula cuatro, inciso (i), una condición resolutoria que disponía que, si la Junta de Planificación aprobaba la consulta de ubicación con variaciones que no le fueran aceptables, podría solicitar la rescisión del contrato y exigir la devolución total del depósito dentro del término de treinta (30) días desde la notificación. Asimismo, alegó que la cláusula cinco disponía que, aunque la parte demandada podía utilizar el dinero del depósito, tenía la obligación de devolverlo si la consulta de ubicación era denegada o aprobada con variaciones no aceptables.

Así las cosas, la parte demandante planteó que el 7 de julio de 2008 remitió una carta a la parte demandada notificándole que no había recibido comunicación alguna sobre la aprobación de la consulta de ubicación. Expuso que, en virtud de ello y conforme a la cláusula cuatro del contrato, solicitó la devolución de la suma pagada como depósito. No obstante, la parte demandada se negó a devolver la suma entregada en concepto de depósito, razón por la cual reiteró su solicitud el 20 de mayo de 2009.

En cuanto a la consulta de ubicación, la parte demandante alegó que esta fue archivada sin perjuicio el 24 de mayo de 2010, lo que, a su juicio, constituyó una denegatoria y/o una variación no aceptable que activó la obligación condicional de la parte demandada, según dispuesta en la cláusula cuatro, inciso (i), del contrato, de devolverle el depósito. Por todo lo anterior, la parte demandante solicitó al foro primario que ordenara a la parte demandada devolver la suma de $225,000.00 pagada en concepto de depósito, más intereses desde el 7 de julio de 2008, una suma no menor de $100,000.00 en concepto de daños y perjuicios, así como honorarios de abogado por temeridad y el pago de costas y gastos.

Luego de varias incidencias procesales, el 14 de junio de 2024, la parte demandada presentó una *Moción en Solicitud de Desestimación de la Demanda*. Esencialmente, señaló que la opción de compraventa fue suscrita entre las partes el 16 de diciembre de 2006 y tenía un término de vigencia de dieciocho (18) meses, es decir, hasta el 16 de junio de 2008. Aseveró que la opción de compraventa venció sin que la parte demandante hubiese solicitado prórroga alguna y que no fue sino hasta después de vencido el plazo estipulado que requirió la devolución de la suma pagada en concepto de depósito. A su vez, añadió que, al momento de la petición, no había ocurrido ninguna de las dos circunstancias bajo las cuales la parte demandante podía solicitar la devolución de la suma entregada. Así, concluyó que la demanda no ameritaba la concesión de remedio alguno, toda vez que la opción de compraventa caducó sin que la parte demandante solicitara la prórroga y sin que ocurriera alguna de las dos condiciones bajo las cuales podía exigir la devolución.

El 15 de julio de 2024, la parte demandante presentó su *Oposición a Moción en Solicitud de Desestimación de la Demanda*. Mediante esta, arguyó que en el contrato no existía disposición o

término alguno que exigiera solicitar la devolución del depósito dentro del término de la vigencia original del contrato. Asimismo, arguyó que, dado a que la Junta de Planificación nunca aprobó la consulta de ubicación, procedía la devolución del depósito conforme a la cláusula diez del contrato.

Luego, el 13 de agosto de 2024, la parte demandada presentó su *Réplica a Oposición a Moción en Solicitud de Desestimación de la Demanda*. En esta señaló que la parte demandante pretendió enmendar las alegaciones de la demanda sin cumplir con el debido proceso al adoptar una nueva teoría de hechos en su escrito en oposición, alegando que, debido a que la aprobación de la consulta de ubicación no ocurrió durante la vigencia del contrato original, entonces podía requerir la devolución de las sumas entregadas como parte de la opción de compraventa. Así, reiteró que las únicas dos circunstancias bajo las cuales la parte demandante podía solicitar la devolución de la suma entregada eran que la consulta de ubicación presentada ante la Junta de Planificación fuera negada o aprobada con variaciones no aceptables. Por ello, sostuvo que, debido a que la Junta de Planificación no denegó ni aprobó con variaciones la consulta de ubicación, y dado que su aprobación no tenía que ocurrir durante la vigencia original de la opción, la parte demandante no podía requerir la devolución del depósito.

Evaluados los escritos de ambas partes, el 20 de agosto de 2024, el foro primario emitió una *Resolución* mediante la cual declaró *no ha lugar* a la solicitud de desestimación presentada por la parte demandada.

Así las cosas, el 19 de septiembre de 2024, la parte demandada presentó su *Contestación a Demanda*. En esta, negó la mayoría de las alegaciones y admitió otras. Como defensa afirmativa, incluyó, entre otras cosas, que la parte demandante no tenía derecho al remedio solicitado y que, de conformidad con la

cláusula cuatro del contrato de opción de compraventa, los únicos dos supuestos en los que esta podía solicitar la devolución del depósito entregado eran si el permiso de ubicación presentado ante la Junta de Ubicación fuera negado y/o variado sin que dicha variación fuera aceptada por la parte demandante. Así, alegó afirmativamente que había cumplido con todos los términos y condiciones pactados en la opción de compraventa.

Más adelante, el 27 de marzo de 2025, la parte demandada presentó una *Enmienda a la Contestación a Demanda* con el fin de conformarla con la prueba documental recopilada. En ese sentido, alegó que ambas partes llegaron a un acuerdo verbal mediante el cual pactaron que la parte demandante le conseguiría un comprador o inversionista interesado en el proyecto y que, de concretarse un acuerdo con ese tercero mediante el desembolso de dinero, la parte demandante podría recibir una suma equivalente a la entregada mediante el contrato de opción extinto. Por ello, sostuvo que dicha parte debía cumplir con el contrato verbal existente.

Culminado el descubrimiento de prueba, el 29 de octubre de 2025, la parte demandante interpuso una *Moción en Solicitud de Sentencia Sumaria*. En particular, alegó la procedencia de la disposición sumaria del pleito, toda vez que, a su juicio, constituían hechos incontrovertidos y sustentados por los documentos presentados que: las partes suscribieron un contrato de opción de compraventa que comprendía dieciocho (18) meses, comprendida entre el 16 de diciembre de 2006 y el 16 de junio de 2008; no fue hasta el año 2014 que la consulta de ubicación fue aprobada; conforme a lo dispuesto en las cláusulas diez y cuatro, inciso (i) del contrato, el 7 de julio de 2008, cuando fue evidente que la consulta no sería aprobada, solicitó la devolución del depósito ascendente a $225,000.00 dentro del plazo establecido de treinta (30) días y; la parte demandada se negó a reembolsar dicho dinero. Así, concluyó

que procedía, conforme al segundo párrafo de la cláusula diez y a su discreción, activar el remedio dispuesto en la cláusula cuatro, inciso (i), el cual establecía que, dentro de los treinta (30) días, la parte demandante podía exigir la devolución total de la suma entregada en concepto de opción.

Por su parte, el 30 de octubre de 2025, la parte demandada instó también su *Moción de Sentencia Sumaria.* En esta, solicitó que se dictara sentencia sumaria a su favor por no existir hechos materiales en controversia. Sostuvo que, tomando en consideración los hechos materiales incontrovertidos, el texto de la opción de compraventa y el amplio transcurso del tiempo sin que se prorrogara dicha opción, lo único que procedía era concluir que esta venció. A su vez, reiteró que, mediante la opción de compraventa, ambas partes acordaron que los únicos dos supuestos bajo los cuales la parte demandante podía solicitar la devolución de la suma de dinero entregada eran si la Junta de Planificación denegaba la consulta de ubicación o aprobaba las variaciones no aceptables para la parte demandante. En virtud de lo anterior, concluyó que, por los actos propios de la parte demandante y debido a que la opción de compraventa venció, no venía obligada a devolver el depósito conforme a lo acordado en el contrato.

En respuesta, el 17 de noviembre de 2025, la parte demandante presentó una *Réplica a Moción de Sentencia Sumaria […].* Particularmente, alegó que la solicitud de sentencia sumaria presentada por la parte demandada constituía una reiteración de la *Moción en Solicitud de Desestimación de la Demanda,* la cual ya había sido declarada *no ha lugar* por el tribunal, por lo que nuevamente no le asistía razón. Sin embargo, coincidió en que no habían hechos materiales en controversia, por lo que reiteró su interpretación de las cláusulas del contrato y que procedía adjudicar el asunto por la vía sumaria.

Por su parte, el 18 de noviembre de 2025, la parte demandada presentó su correspondiente *Oposición a "Moción en Solicitud de Sentencia Sumaria"*. En específico, señaló que la solicitud de sentencia sumaria interpuesta por la parte demandante no cumplía con los requisitos de la Regla 36.3 (a) de las Reglas de Procedimiento Civil, *infra*. Asimismo, incluyó una relación concisa y organizada, con referencia a los párrafos enumerados por la parte demandante en su petitorio, de los hechos materiales que, a su juicio, estaban en controversia con indicación de la prueba donde se establecían.

Sometido el asunto y atendidos los escritos sometidos por ambas partes, así como la prueba documental complementaria en apoyo de éstos y examinada la totalidad del expediente, el 15 de diciembre de 2025, el foro primario emitió una *Sentencia* mediante la cual concluyó que la parte demandante no tenía razón en sus planteamientos. Ello tras un análisis integral de las disposiciones contractuales contenidas en el contrato de opción de compraventa. Expuso que la controversia principal entre las partes estribaba en determinar el significado de la frase "no fue aprobada" contenida en el segundo párrafo de la cláusula diez. No obstante, razonó que dicha frase fue utilizada como equivalente a una denegatoria. De manera que, según los términos del contrato, la única opción disponible para la parte demandante ante la inacción de la Junta de Planificación era solicitar una prórroga de dieciocho (18) meses adicionales.

Asimismo, señaló que en la cláusula cinco del contrato se establecieron las razones particulares por las cuales podía devolverse el depósito, siendo estas únicamente que el permiso de ubicación fuera denegado o aprobado con variaciones no aceptables para la parte demandante. Así pues, concluyó que el lenguaje del contrato era claro en cuanto a las circunstancias bajo las cuales procedía la devolución del depósito. Finalmente, determinó que no

procedía la causa de acción por enriquecimiento injusto, pues la retención del depósito por parte de la parte demandada encontraba fundamento en el contrato de opción de compraventa y en las cláusulas libres y válidamente suscritas por las partes.

Por tal razón, declaró *ha lugar* a la solicitud de sentencia sumaria incoada por la parte demandada y, consecuentemente, desestimó la *demanda* de epígrafe. Tras evaluar los escritos y los documentos acompañados, el foro apelado procedió a formular las siguientes determinaciones de hechos:

1. CME es la dueña registral, en pleno dominio, de la siguiente propiedad ubicada en el municipio de Coamo, Puerto Rico:

   RÚSTICA: Predio de terreno denominado Minas y Elvira, situado en el Barrio San Idelfonso de Coamo, compuesta de Doscientas Cincuenta y Siete punto Veintitrés Mil Quinientas Catorce cuerdas (257.23514 cdas.), equivalentes a Ciento Una (101) hectáreas, Veintisiete (27) áreas y Treinta y Seis (36) centiáreas, en lindes por el Norte, con terrenos de Domingo Emmanueli, Elba Blasino de Carro, Corporación de Renovación Urbana y Vivienda, Urbanización El Edén, Compañía de Fomento Industrial de Puerto Rico, Cecilio Armstrong y Ramón N. Cuevas; por el SUR, con Catalino Rivera, Luis Rafael Santiago, Carretera Estatal Número Catorce (14) y Municipio de Coamo; por el ESTE, con el Estado Libre Asociado de Puerto Rico, Urbanización El Edén, Cecilio Armstrong, Zoilo María Colón, hijo, Francisco Bonilla, Sylvia Mateo de Cappa y Ramón N. Cuevas; y por el Oeste, con Catalino Rivera y Luis Rafael Santiago en parte y en parte con el Río Minas y en otra parte con Elba Blasini de Carro.

   Este es el remanente de la finca luego de varias segregaciones según Escritura Número Treinta y Ocho (38) otorgada en Coamo el veintiocho (28) de mayo de mil novecientos ochenta y dos (1982) ante Jorge Puig, inscrita en nota marginal al folio Ciento Cincuenta y Tres, vuelto (153 vto.) del tomo Sesenta y Uno (61) de Coamo.

   Luego de esta descripción se han segregados y/o expropiado Seis punto Seiscientas Nueve (6.609) cuerdas; Cuarenta y Cinco (45.00) cuerdas; Quince punto Setenta y Siete Mil Doscientas Ocho (15.77208) cuerdas; Dos punto Cinco Mil Setecientos Ochenta y Cuatro (2.5784) cuerdas; Cuatro Mil Doscientos Noventa y Dos punto Cuatro Mil Seiscientos Noventa y Cuatro (4,292.4694) metros cuadrados; Uno punto Mil Doscientas Setenta y Seis (1.1276) cuerdas; Catorce Mil Seiscientos Setenta y Ocho punto Sesenta y Un (14,678.61) metros cuadrados; y Dos Mil Cientos Setenta punto Ochenta y Dos (2,170.82) metros cuadrados sin que se haya descrito su remanente. Inscrita al folio Treinta y Nueve (39) del Tomo Treinta y Siete (37) de Coamo, finca número Mil Ciento Noventa y Siete (1197).

2. El 16 de diciembre de 2006, LORTU-TA y CME suscribieron la escritura pública núm. 32, titulada Opción de Compraventa, ante la notaria Zulma Rodríguez González.

3. En representación de LORTU-TA compareció el señor Juan Ramón Zalduondo Viera también conocido como Juan Zalduondo y Juan R. Zalduondo Viera, autorizado mediante una resolución corporativa.

4. En representación de CME compareció la señora Judith Sánchez Del Valle también conocida como Judith Marchand, autorizada mediante una resolución corporativa.

5. A través de la referida escritura, las partes convinieron una opción de compraventa sobre la propiedad antes descrita.

6. Según la cláusula uno, las partes acordaron un precio alzado de compraventa de $13,000,000.

7. Según la cláusula dos, LORTU-TA entregó a CME la suma de $225,000 como depósito y opción, cantidad aplicable y acreditable al precio de compraventa.

8. Las partes acordaron la siguiente cláusula cuatro:

El término de esta opción comenzará a discurrir desde esta fecha y tendrá una vigencia original de dieciocho (18) meses calendario, después de esta fecha, sin embargo, podrá prorrogarse por dieciocho (18) meses adicionales a instancias de "LA COMPRADORA" siempre que la Junta de Planificación no haya determinado la aprobación del proyecto en la Consulta de Ubicación número Dos Mil Dos, guión[sic], Setenta y Seis, guión[sic], Cero Doscientos Ochenta y Siete, guión[sic] "JPU"(2002-66-0287-JPU) (en adelante "LA CONSULTA")

(i) En la eventualidad de que la Junta de Planificación apruebe "LA CONSULTA" con alguna variación a como fue sometido el proyecto originalmente para su aprobación y dicha variación no sea aceptable a "LA COMPRADORA", ésta podrá, dentro de treinta (30) días luego de ser notificada por "LA VENDEDORA" de que la Consulta fue aprobada, dar por rescindido el contrato y "LA [VEN]DEDORA" le devolverá a "LA COMPRADORA" la totalidad de [las su]mas entregadas en concepto de opción.

9. De igual manera, las partes acordaron la siguiente cláusula cinco:

La totalidad [del] dinero entregado por "LA COMPRADORA" por concepto de Opción de Compraventa de la propiedad en cuestión será entregado a la "LA VENDEDORA" y podrá ser usado por ésta, obligándose a devolverla a "LA COMPRADORA" únicamente si el permiso de ubicación mencionado fuera negado y/o variado y dicha variación no fuese aceptable a "LA COMPRADORA", en ambos casos "LA COMPRADORA" reconoce y acepta que su único remedio bajo este contrato será el solicitar la devolución de todas las cantidades entregadas a "LA VENDEDORA" en concepto de depósito bajo este contrato.

10. En la cláusula siete, inciso 7.5, provee lo siguiente:

Consulta de Ubicación ante la Junta de Planificación de Puerto Rico. "LA VENDEDORA" expresa que interpondrá sus mejores esfuerzos para llevar a cabo todas las diligencias necesarias para que la Consulta de Ubicación sea aprobada por la Junta de Planificación de Puerto Rico. "LA VENDEDORA" no garantiza que la Consulta de Ubicación será aprobada, ni que de ser aprobada, sea aprobada tal y como se sometió bajo el caso núm. Dos Mil Dos, guión[sic], Setenta y Seis, guión[sic], Cero Doscientos Ochenta y Siete, guión[sic], "JPU" (2002-66-0287-JPU), ni que la misma de ser aprobada, sea aprobada durante la vigencia de este contrato.

11. Las partes acordaron además la cláusula diez:

T[É]RMINO Y LUGAR PARA EL OTORGAMIENTO DE LA ESCRITURA DE COMPRAVENTA. "LA COMPRADORA" tendrá un término de treinta (30) días calendarios contados desde la notificación de que "LA CONSULTA" fue aprobada final, firme e inapelable para notificarle a "LA VENDEDORA" si habrá o no de ejercer la opción aquí concedida. El otorgamiento de la Escritura de Compraventa de la propiedad deberá efectuarse dentro de los sesenta (60) días calendarios a partir de la notificación a "LA COMPRADORA" de que "LA CONSULTA" fue aprobada de tal forma.

En todo caso en que "LA CONSULTA" no fue aprobada o fuese aprobada con alguna variación o enmienda a como fuere originalmente sometida y esta variación o enmienda no fuere aceptable a "LA COMPRADORA" a su opción, sería de aplicación el inciso (i) de la cláusula CUATRO del presente contrato, y el único remedio al cual "LA COMPRADORA" tendría derecho bajo este contrato de opción será la devolución de la totalidad de las cantidades pagadas por concepto de depósito.

12. La cláusula catorce provee:

14.1 No Ejercicio de la Opción a Compra por Razones No Atribuibles a "LA VENDEDORA". En caso de que "LA VENDEDORA" obtenga la aprobación de "LA CONSULTA" final, firme e inapelable, tal y como fue sometida, y así se lo notifique a "LA COMPRADORA" y "LA COMPRADORA" no notifique sobre su intención de ejercer la opción dentro de los treinta (30) días calendarios establecidos o, por razones no atribuibles a "LA VENDEDORA", no otorgue la Escritura de Compraventa dentro de los sesenta (60) días calendarios subsiguientes a la fecha de la notificación de que la Consulta de Ubicación fue aprobada final, firme e inapelable, "LA VENDEDORA", sin necesidad de trámite o gestión adicional alguno, podrá retener para sí la totalidad de los dineros entregados.

13. La opción de compraventa no fue prorrogada.

14. La opción de compraventa venció el 16 de junio de 2008.

15. El 7 de julio de 2008, el señor Juan R. Zalduondo Viera envió una carta a CME — referida a un proyecto identificado como Shopping Center- Vega Baja— indicando que, habiendo vencido la opción el 16 de junio de 2008 y no habiendo sido aprobada la consulta

de ubicación JPU2002 66-0287JPU, solicitaba la devolución del depósito de $225,000.

16. El 20 de mayo de 2009, el señor Juan R. Zalduondo Viera envió otra carta al señor Jorge Sánchez Del Valle reiterando la solicitud de devolución del depósito dentro de un término de quince (15) días.

17. El 24 de mayo de 2010, la Junta de Planificación emitió una Resolución Archivar sin perjuicio sobre la consulta 2002-66-0287-JPU, hasta que el Departamento de la Vivienda acreditara el cumplimiento con la Ley Núm. 416-2004. Una vez recibida dicha evidencia, se procedería a adjudicar la consulta.

18. El 10 de diciembre de 2010, LORTU-TA presentó una demanda contra CME, con el alfanumérico B2CI201001518, solicitando la devolución del depósito de $225,000, más daños de no menos de $100,000 y $25,000 en costas, gastos y honorarios de abogado.

19. El 30 de enero de 2012, las partes solicitaron el desistimiento de la demanda.

20. El 16 de febrero de 2012, se notificó la *Sentencia* desestimando la demanda.

21. El 27 de mayo de 2014, la Junta de Planificación emitió una Resolución aprobando la consulta de ubicación 2002-66-0287-JPU.

22. El 31 de enero de 2024, LORTU-TA envió una carta al señor Jorge E. Sánchez Del Valle reclamando el reembolso de los $225,000 pagados como depósito, alegando que el permiso de ubicación nunca fue gestionado dentro del plazo contractual y que el señor Sánchez Del Valle había reconocido la deuda e identificado ciertas parcelas para dación en pago.

En desacuerdo, el 30 de diciembre de 2025, la parte demandante presentó una *Moción de Reconsideración* exponiendo su inconformidad con la interpretación de las cláusulas contractuales relativas al reembolso del depósito efectuada por el foro primario. Sostuvo que la inacción de la Junta de Planificación dentro del plazo del contrato de opción solo podía interpretarse como el equivalente a una denegatoria de la consulta de ubicación. No obstante, la misma fue denegada por el tribunal en esa misma fecha.

Inconforme aun, el 29 de enero de 2026, la parte apelante compareció ante *nos* mediante *apelación* alegando la comisión del siguiente error:

PRIMER ERROR: ERRÓ EL TPI AL CONCLUIR, DE MANERA INCORRECTA, QUE LA DEVOLUCIÓN DEL

DINERO PAGADO POR LA OPCIÓN PROCEDÍA ÚNICAMENTE EN DOS SUPUESTOS - LA DENEGACIÓN DE LA CONSULTA DE UBICACIÓN O SU APROBACIÓN CON VARIACIONES INACEPTABLES PARA LA APELANTE - RESTRINGIENDO. SU REMEDIO ANTE LA INACCIÓN DE LA JUNTA DE PLANIFICACIÓN, A SOLO SOLICITAR UNA PRÓRROGA ADICIONAL DE DIECIOCHO (18) MESES.

Examinado el recurso ante nuestra consideración, el 2 de febrero de 2026, emitimos una *Resolución* mediante la cual le concedimos un término de veinte (20) días a la parte apelada para presentar su posición al recurso de apelación. En cumplimiento, el 23 de febrero de 2026, la parte apelada compareció ante este foro intermedio mediante su *Oposición a Apelación.*

Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### A. Sentencia sumaria

Como es sabido, la Regla 36 de Procedimiento Civil (32 LPRA Ap. V) regula todo lo relacionado a la moción de sentencia sumaria. *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2024); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335, 349 (2023). Dicho mecanismo procesal es utilizado en aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, la celebración de un juicio en su fondo no es necesaria en la medida que solo resta por dirimir determinadas controversias de derecho. *Acevedo y otros v. Depto. Hacienda y otros*, *supra*, pág. 350; *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021). Según ha resuelto nuestro Tribunal Supremo, un hecho material es aquel que puede alterar la forma en que se resuelve una reclamación, de acuerdo con el derecho sustantivo aplicable. *Cruz, López v. Casa Bella y otros, supra*, pág. 993.

El propósito que persigue el mecanismo de la sentencia sumaria es que los pleitos civiles sean solucionados de forma justa,

rápida y económica. *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 610 (2023). Véase, además, *Acevedo y otros v. Depto. Hacienda y otros, supra,* pág. 350; *SLG Fernández-Bernal v. RAD-MAN et al., supra,* pág. 335; *Rodríguez Méndez et al. v. Laser Eye,* 195 DPR 769, 785 (2016). Por tanto, quien promueva la sentencia sumaria deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023). Así, la Regla 36.3 de Procedimiento Civil (32 LPRA Ap. V), establece cual será el contenido y los requisitos de forma que deberán observarse tanto en la solicitud de sentencia sumaria que inste la parte promovente, como en la oposición que pueda presentar la parte promovida. *Acevedo y otros v. Depto. Hacienda y otros, supra,* pág. 350; *León Torres v. Rivera Lebrón,* 204 DPR 20, 43 (2020).

Por ser la sentencia sumaria un remedio discrecional, el principio rector para el uso de este mecanismo es el sabio discernimiento del juzgador, ya que mal utilizada puede privar a una parte de su día en corte, principio elemental del debido proceso de ley. *Jusino et als. v. Walgreens,* 155 DPR 560, 578 (2001). Así pues, un tribunal podrá emitir una sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto a las declaraciones juradas – según fueran ofrecidas – surge que no existe una controversia real sustancial en cuanto a ningún hecho material, restando entonces resolver la controversia en estricto derecho. *Acevedo y otros v. Depto. Hacienda y otros, supra,* pág. 351. Véase, además, Regla 36.3 de Procedimiento Civil, *supra.* Así pues, resulta esencial que de la prueba que acompaña la solicitud de sentencia sumaria surja de manera preponderante que no existe controversia sobre los hechos

medulares del caso. *Cruz, López v. Casa Bella y otros, supra,* pág. 993.

Así, para sostener u oponerse a una petición de sentencia sumaria las partes podrán presentar, entre otras, las siguientes piezas de evidencia: certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas o affidavits, y hasta prueba oral. *Acevedo y otros v. Depto. Hacienda y otros, supra,* pág. 350 citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta ed., San Juan, LexisNexis, 2017, pág. 318. Nuestro máximo Foro ha sido enfático en que, cuando una parte acompaña su solicitud u oposición de sentencia sumaria de una o varias declaraciones juradas, estas deben cumplir con las disposiciones especiales pautadas en la Regla 36.5 de Procedimiento Civil (32 LPRA Ap. V). *Acevedo y otros v. Depto. Hacienda y otros, supra,* pág. 350.

A esos efectos, se requiere que las declaraciones juradas demuestren afirmativamente el conocimiento personal y la calificación del testigo, también se requiere que se presenten únicamente hechos admisibles como evidencia en un juicio. Hernández Colón, *op. cit.* pág. 319. Por consiguiente, cuando la solicitud de sentencia sumaria está apoyada en una o varias declaraciones juradas, dicha prueba no podrá contener solo conclusiones sin hechos específicos que las sustenten. *Acevedo y otros v. Depto. Hacienda y otros, supra,* págs. 350-351; *Roldán Flores v. M. Cuebas et al.,* 199 DPR 644, 677 (2018). Lo anterior, serían meras conclusiones reiterando las alegaciones de la demanda y, por tanto, prueba insuficiente y sin valor probatorio. *Acevedo y otros v. Depto. Hacienda y otros, supra,* pág. 351 citando a J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Pubs. J.T.S., 2000, T. I, págs. 615-616.

El Tribunal Supremo de Puerto Rico ha sido enfático en que, el hecho de que la parte promovida no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica que dicha moción procederá automáticamente si efectivamente existe una controversia sustancial sobre hechos materiales. *Acevedo y otros v. Depto. Hacienda y otros, supra*, pág. 351; *SLG Fernández-Bernal v. RAD-MAN et al., supra*, pág. 337. Ahora bien, nuestro máximo Foro ha reiterado que una moción de sentencia sumaria no procederá cuando: (1) existen hechos materiales controvertidos (2) hay alegaciones afirmativas en la demanda que no han sido refutadas (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material, o (4) como cuestión de derecho no procede. *Acevedo y otros v. Depto. Hacienda y otros, supra*, pág. 351. Véase, además, *SLG Fernández-Bernal v. RAD-MAN et al., supra*, págs. 335-336; *Vera v. Dr. Bravo*, 161 DPR 308, 333-334 (2004).

De igual forma, el mecanismo de sentencia sumaria no es utilizable cuando existen controversias de hechos materiales sobre elementos subjetivos de intención, propósitos mentales o negligencia. *Cruz, López v. Casa Bella y otros, supra*, pág. 993. Véase, además, *Acevedo y otros v. Depto. Hacienda y otros, supra*, pág. 352; *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 663 (2017); *Ramos Pérez v. Univisión*, 178 DPR 200, 219 (2010); *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994). Sin embargo, nada impide que se utilice el mecanismo de sentencia sumaria en reclamaciones que requieran elementos subjetivos o de intención cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge la inexistencia de controversia en torno a los hechos materiales. *Cruz Cruz y otros v. Casa Bella Corp., supra*, págs. 993-994.

Ahora bien, una vez presentada una moción de sentencia sumaria y se sostenga en la forma provista en la Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede. Véase, Regla 36.3 (c) de Procedimiento Civil, *supra.*

Además, puntualizamos que "al momento de atender una solicitud de revisión de sentencia sumaria los foros apelativos estamos llamados a examinar el expediente de *novo* y verificar que las partes cumplieron con las exigencias pautadas en las Reglas de Procedimiento Civil". *Acevedo y otros v. Depto. Hacienda y otros*, *supra*, pág. 352. Véase, además, *SLG Fernández-Bernal v. RAD-MAN et al.*, *supra*, pág. 338; *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010 (2020); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118 (2015). Según ha establecido el Tribunal Supremo, este Tribunal está limitado a: (1) considerar los documentos y argumentos que se presentaron ante el foro primario (lo cual implica que, en apelación, los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el tribunal de instancia ni esbozar nuevas teorías); (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta. *González Meléndez v. Mun. San Juan et al.*, *supra*, pág. 611. Así pues, los foros apelativos estamos en la misma posición que los tribunales de instancia y se utilizan los mismos criterios para evaluar una solicitud de sentencia sumaria. *Íd.* Véase, además, *Cruz, López v. Casa Bella y otros, supra*, pág. 994.

**B. Contrato de opción**

El Código Civil de Puerto Rico de 1930 carecía de disposiciones que expresamente regularan la figura del contrato de opción.[1] Sin embargo, ante dicha ausencia, todo lo concerniente a esta figura fue desarrollado jurisprudencialmente.

Así pues, el contrato de opción fue definido como aquel "convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal". *PDCM Assoc. v. Najul Bez*, 174 DPR 716, 724 (2008), citando a *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 246 (2002). Del contrato de opción nace el derecho que le confiere al optante la facultad de decidir, "a su arbitrio y dentro de un plazo cierto, si se celebra el contrato por el que se opta". *PDCM Assoc. v. Najul Bez, supra*, pág. 724. Lo anterior responde a que "[l]a opción está atada a un contrato definitivo que las partes han delimitado previamente", como por ejemplo, un contrato de compraventa. *Íd.* Por otro lado, el contrato de opción no solo concede al optante la faculta de perfeccionar el contrato definitivo mediante la aceptación de la opción, sino que le impone al optatario la obligación de no frustrar el derecho del que goza el optante mientras el plazo para ejercer el derecho de opción está vigente. *Matos, González v. SLG Rivera-Freytes*, 181 DPR 835, 841 (2011).

Ahora bien, el derecho de opción puede quedar extinguido con su renuncia o con el transcurso del plazo de caducidad establecido en el contrato de opción sin que el optante ejerza la opción. *Mayagüez Hilton Corp v. Betancourt*, supra, pág. 249. Asimismo,

---

[1] Aunque el Código Civil de 1930 fue derogado por la Ley Núm. 55-2020, conocida como el Código Civil de Puerto Rico de 2020, haremos referencia al primero por ser el que estaba en vigor a la fecha en que las partes suscribieron el contrato en controversia.

también se extingue con su ejercicio positivo, es decir, tras ejercer el derecho de opción, lo que a su vez, perfecciona el contrato aceptado. *Íd.* Véase, además, *Matos, González v. SLG Rivera-Freytes, supra,* pág. 842.

Nuestro más Alto Foro ha reconocido que los principios generales de las obligaciones y los contratos aplican a los contratos de opción. *Rosa Valentín v. Vázquez Lozada,* 103 DPR 796, 804 (1975); *Pérez v. Sampedro,* 86 DPR 526, 529 (1962). Por ello, rige también el principio de libertad de contratación o autonomía de la voluntad, recogido en el Art. 1207 del Código Civil de 1930, que disponía que "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni el orden público".  31 LPRA ant. sec. 3372. Asimismo, establecía que las obligaciones que nacen de los contratos tienen fuerza de ley entre los contratantes. Artículo 1044 del Código Civil de 1930, 31 LPRA ant. sec. 2994. Las disposiciones anteriores recogían el principio de *pacta sunt servanda* en nuestra jurisdicción, que no es otra cosa que el principio de que las partes están obligadas a cumplir con lo pactado. *PRFS v. Promoexport,* 187 DPR 42, 52 (2012); *BPPR v. Sucn. Talavera,* 174 DPR 686, 693 (2008). Así también, las partes estaban obligadas a cumplir no sólo con lo expresamente pactado, sino con todas aquellas obligaciones que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil de 1930, 31 LPRA ant. sec. 3375. No obstante, "el principio de libertad contractual no es irrestricto y está sujeto a intervención de los tribunales". *Coop. Sabaneña v. Casiano Rivera,* 184 DPR 169, 174 (2011).

Para que un contrato se considere perfeccionado, deben concurrir los siguientes requisitos: consentimiento, objeto y causa. Artículo 1213 del Código Civil de 1930, 31 LPRA ant. sec. 3391. Una

vez perfeccionado un contrato, el alcance de las obligaciones en el pactadas va a depender de la intención de las partes al entrar en la relación contractual. *Pepsi-Cola v. Mun. Cidra et al.*, 186 DPR 713, 752 (2012); *VDE Corporation v. F & R Contractors*, 180 DPR 21, 35 (2010). Al evaluar los términos de un contrato, debemos tener presente lo dispuesto en el Art. 1233 de Código Civil de 1930, a los efectos de que si los términos de un contrato son claros y no arrojan dudas sobre la intención de las partes, se estará al sentido literal de sus cláusulas. 31 LPRA ant. sec. 3471. Véase, además, *Trinidad v. Chade*, 153 DPR 280, 289 (2001). Por otro lado, si el texto del contrato pareciera contrario a la intención de las partes, prevalecerá la intención de estas por encima del texto contractual. *Íd.* Por su parte, el Art. 1234 del Código Civil de 1930 disponía que para juzgar la intención de las partes de un contrato, "deberá atenderse principalmente a los actos de éstos, coetáneos y posteriores al contrato". 31 LPRA ant. sec. 3472. También se deben tomar en consideración "los actos y las circunstancias anteriores a la otorgación del contrato que puedan indicar la voluntad de los contratantes". *Pepsi-Cola v. Mun. de Cidra et al.*, *supra*, pág. 752; *VDE Corporation v. F & R Contractors*, *supra*, pág. 35.

**C. Enriquecimiento injusto**

La doctrina de enriquecimiento injusto es un principio general del derecho fundado en la equidad que permea todo nuestro ordenamiento jurídico. *Ortíz Andújar v. ELA*, 122 DPR 817, 822 (1988). Esta doctrina puede aplicarse a situaciones muy distintas entre sí, siempre y cuando tengan en común un elemento: el que de no aplicarse se perpetraría la inequidad de que alguien se enriqueciese injustamente en perjuicio de otro. *SLG Sánchez v. SLG Valentín*, 186 DPR 503, 515 (2012). Así, se recurre a esta figura "cuando la ley no ha previsto una situación en la que se produce un desplazamiento patrimonial que no encuentra una explicación

razonable en el ordenamiento vigente". *Mun. Quebradillas v. Corp. Salud Lares,* 180 DPR 1003, 1019 (2011).

Para que proceda la aplicación de la figura del enriquecimiento injusto, es necesario que existan los siguientes supuestos: (1) la existencia de un enriquecimiento; (2) un empobrecimiento correlativo; (3) una conexión entre el empobrecimiento y el enriquecimiento; (4) falta de causa que justifique el enriquecimiento y; (5) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. *SLG Sánchez v. SLG Valentín,* supra, pág. 516. Véase, además, *Mun. Quebradillas v. Corp. Salud Lares,* supra, págs. 1019-1020; *Ortíz Andújar v. ELA,* supra, pág. 823.

### III.

En su único señalamiento de error, la parte apelante sostiene que incidió el foro primario al concluir que la devolución del dinero pagado por la opción procedía únicamente en dos supuestos, a saber: la denegación de la consulta de ubicación o su aprobación con variaciones inaceptables, restringiendo el remedio ante la inacción de la Junta de Planificación, a solicitar únicamente una prórroga adicional de dieciocho (18) meses.

Nos corresponde determinar inicialmente, y de conformidad con lo resuelto por nuestro Tribunal Supremo en el caso de *Roldán Flores v. M. Cuebas et al., supra,* si las partes cumplieron con los requisitos que dimanan de la Regla 36 de Procedimiento Civil, *supra,* de modo que podamos entonces considerar las mociones presentadas. *Veamos.*

Al examinar la *Moción en Solicitud de Sentencia Sumaria* presentada por la parte apelante ante el foro primario, juzgamos que, esta incumplió sustancialmente con los requisitos recabados por la Regla 36.3(a) de Procedimiento Civil, *supra.* En particular, la parte apelante no incluyó: (1) una exposición breve de las

alegaciones de las partes; (2) los asuntos litigiosos en controversia y; (3) la causa de acción, reclamación o parte respecto a la cual era solicitada la sentencia sumaria. Asimismo, aunque incluyó una relación concisa, organizada y en párrafos enumerados de los hechos esenciales y pertinentes sobre los cuales, a su juicio, no existía controversia sustancial, no hizo referencia en cada párrafo a las páginas de las declaraciones juradas u otra prueba admisible en evidencia en que se sustentaban dichos hechos, ni a otros documentos admisibles contenidos en el expediente.

Por su parte, el escrito en *Oposición a "Moción de Solicitud de Sentencia Sumaria"* presentado por la parte apelada, cumple con los requisitos de la Regla 36.3 (b) de Procedimiento Civil, *supra*. La parte apelada incluyó una relación concisa y organizada, con referencia a los párrafos enumerados por la parte promovente, de los hechos materiales que, a su juicio, estaban en controversia con indicación especifica de la prueba que los sustentaba. Además, expuso de manera específica el derecho aplicable y las razones por las cuales entendía improcedente el remedio solicitado por la parte apelante.

De igual forma, el petitorio sumario de la parte apelada cumplió con los requisitos contenidos en la Regla 36.3 (a) de Procedimiento Civil, *supra*. En particular, esta incluyó una exposición sucinta de las alegaciones de las partes, identificó los asuntos litigiosos o en controversia, precisó la reclamación respecto a la cual solicitaba la adjudicación sumaria e incorporó una relación organizada y numerada de los hechos materiales que alegó como incontrovertidos, con referencia específica a la evidencia documental y admisible que obraba en el expediente.

No obstante, el escrito en oposición instado por la parte apelante incumplió con los requisitos contenidos en la Regla 36.3 (b) de Procedimiento Civil, *supra*. Mediante su *Réplica a Moción de Sentencia Sumaria,* la parte apelante no controvirtió de forma

detallada y específica los hechos propuestos por la parte apelada. En primer lugar, no relacionó de forma concisa los párrafos, según enumerados en el petitorio sumario de la parte apelada. A su vez, se limitó a exponer narrativamente las razones por las cuales entendía que no le asistía la razón a la parte apelada, sin hacer referencia a declaraciones juradas ni a documento admisible alguno que sustentara la existencia de controversias reales sobre hechos materiales. Además, omitió señalar las razones por las cuales no debía ser dictada la sentencia, argumentando el derecho aplicable.

Sin embargo, el solo hecho de no presentar evidencia que controvierta la de la parte apelada no implica automáticamente que procederá la sentencia sumaria. *Fernández Martínez v. RAD-MAN San Juan, supra,* pág. 337. Por consiguiente, debemos evaluar si existe una controversia legítima sobre algún hecho material que impida disponer del caso por la vía sumaria. Tras un examen detenido del expediente, de las mociones de sentencia sumaria y sus respectivas oposiciones, así como de los documentos anejados a estas, concluimos que no existen hechos materiales en controversia. En consecuencia, coincidimos con las determinaciones de hechos formuladas por el foro primario y las adoptamos como nuestras.

Ahora bien, según discutido, debemos recordar que, para que proceda una moción de sentencia sumaria, no basta con la inexistencia de hechos en controversia, sino que la *sentencia* debe proceder conforme al derecho sustantivo. *Ortiz v. Holsum,* 190 DPR 511, 525 (2014). Por tal razón, nos corresponde revisar *de novo* si el foro primario aplicó correctamente el derecho.

Examinadas integralmente las cláusulas del contrato de opción de compraventa en controversia, coincidimos con la interpretación realizada por el foro primario en cuanto a que el contrato distinguía claramente entre la inacción administrativa de la Junta de Planificación y una determinación adversa sobre la

consulta de ubicación. La controversia medular gira en torno al significado de la frase "no fue aprobada" contenida en el segundo párrafo de la cláusula diez y, particularmente, a si dicha expresión incluía la mera ausencia de determinación por parte de la Junta de Planificación o si, por el contrario, equivalía a una denegatoria de la consulta de ubicación. Una lectura armónica de todas las cláusulas del contrato nos lleva a coincidir con la última interpretación.

En primer lugar, el propio esquema contractual demuestra que las partes previeron expresamente el escenario de que la Junta de Planificación no emitiera determinación alguna dentro del término original de la opción. La cláusula cuatro establecía que, "siempre que la Junta de Planificación no haya determinado la aprobación del proyecto en la Consulta de Ubicación [...]", la parte apelante podía solicitar una prórroga adicional de dieciocho (18) meses. Es decir, el contrato contempló específicamente la inacción administrativa y le concedió un remedio particular: la extensión del término de la opción. Ello resulta determinante, pues evidencia que las partes no igualaron la falta de acción de la Junta de Planificación con una denegatoria de la consulta.

Contrario a lo sostenido por la parte apelante, el lenguaje utilizado en dicha cláusula contrasta marcadamente con la frase "no fue aprobada" empleada posteriormente en la cláusula diez. Cuando las partes quisieron referirse a la ausencia de actuación administrativa utilizaron expresamente la frase "no haya determinado la aprobación". Sin embargo, cuando aludieron a las consecuencias derivadas de una determinación desfavorable utilizaron la frase "no fue aprobada". Dicha diferencia no puede considerarse accidental. Conforme a las normas de interpretación contractual, debe presumirse que las partes escogieron deliberadamente un lenguaje distinto para atender supuestos distintos. Por ello, interpretar ambas expresiones como equivalentes

tornaría en un ejercicio fútil la distinción claramente incorporada al contrato.

En segundo lugar, la cláusula cinco refuerza esa conclusión al delimitar las únicas circunstancias bajo las cuales procedía la devolución del depósito entregado por concepto de opción. Dicha cláusula disponía expresamente que la devolución procedería "únicamente si el permiso de ubicación mencionado fuera negado y/ variado y dicha variación no fuese aceptable" a la parte apelante. A su vez, la cláusula iba más allá al establecer que la parte apelante reconocía que "en ambos casos" su único remedio sería solicitar la devolución total de las cantidades entregadas. El uso de un lenguaje restrictivo y categórico demuestra inequívocamente la intención de las partes de limitar ese remedio a dos escenarios específicos. En ninguna parte se incluyó la mera demora o inacción administrativa como fundamento para exigir la devolución del depósito.

Consecuentemente, aceptar la interpretación propuesta por la parte apelante implicaría añadir una tercera causal de devolución que las partes nunca pactaron expresamente. Ello no solo alteraría el balance contractual acordado, sino que provocaría una contradicción interna entre las cláusulas cuatro, cinco y diez. Mientras la cláusula cuatro dispone que el derecho a solicitar una prórroga se activa únicamente ante la falta de determinación de la Junta de Planificación, la interpretación de la parte apelante transformaría esa misma circunstancia en una causal automática para resolver el contrato y recuperar el depósito.

Asimismo, resulta significativo que la cláusula diez tampoco regula la devolución del depósito. Según su propio título y contenido, dicha cláusula se limita a establecer los términos y condiciones para el otorgamiento de la escritura de compraventa una vez la consulta de ubicación fuese aprobada. En ese contexto, el término de treinta (30) días para ejercer la opción y el término de

sesenta (60) días para otorgar la escritura presuponen necesariamente la existencia de una determinación administrativa notificada por parte de la Junta de Planificación. A su vez, si analizamos el texto en conjunto advertimos que la referida cláusula en su segundo párrafo se circunscribe a delimitar las opciones de la parte apelante ante una acción desfavorable. Por lo que, en ausencia de una determinación aprobando la consulta, tales términos ni siquiera comenzarían a transcurrir. Por ello, resulta ilógico sostener que la mera inacción administrativa activaba automáticamente derechos no contemplados expresamente en dicha cláusula.

Por consiguiente, toda vez que durante la vigencia del contrato de opción la consulta no fue denegada ni aprobada con variaciones no aceptables, no se configuró ninguna de las condiciones contractualmente pactadas para exigir la devolución del depósito. Así, el contrato de opción venció sin que la parte apelante recurriera al único remedio disponible ante la inacción administrativa: una solicitud de prórroga. En consecuencia, la retención de la suma pagada en concepto de depósito encuentra fundamento en las disposiciones libre y voluntariamente acordadas por las partes, lo que también derrota la reclamación de enriquecimiento injusto.

En suma, luego de un examen ponderado de la totalidad del expediente ante nuestra consideración, concluimos que el foro primario no erró en su interpretación de las cláusulas del contrato de opción en controversia. Por consiguiente, colegimos que no se cometió el error señalado por la parte apelante.

**IV.**

Por los fundamentos antes expuestos, *confirmamos* la *Sentencia* apelada.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones